UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD STEELE,<br><br>                    Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of social<br>Security,<br><br>                    Defendant. | NO.  CV-04-334-MWL<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment, noted for hearing without oral argument on May 31, 2005. (Ct. Rec. 11, 15.) Attorney Lora Lee Stover represents plaintiff; Special Assistant United States Attorney Leisa A. Wolfe represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 11).

Plaintiff applied for Social Security Income ("SSI") and disability income benefits ("DIB") in April of 2002. (Tr. 75-77.) Her claim was denied. After a hearing, Administrative Law Judge (hereinafter, "ALJ,") Richard Hines denied benefits in a decision

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
                 - 1

issued on January 20, 2004. (Tr. 21.) The Appeals Council denied review. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ found plaintiff had not engaged in substantial gainful activity after his alleged onset date of January 1, 2001. (Tr. 22.) The ALJ found that though plaintiff suffers from liver disease/hepatitis C and cutaneous porphyria tarda ("PCT" or "CPT") with left hand spasm/contracture, impairments that are severe, his impairments do not meet or medically equal the Listings. (Tr. 24.) The ALJ found that plaintiff retains the residual functional capacity for a significant range of light work, with several specified limitations. (Tr. 26.) The ALJ found that plaintiff is unable to perform his past relevant work. (Id.) Relying on the testimony of a vocational expert, the ALJ found that plaintiff could perform work that exists in significant numbers in the national economy, specifically, as an agricultural sorter, a cannery worker and a cafeteria worker. (Tr. 27.) The ALJ found Plaintiff was not disabled.

**STANDARD OF REVIEW**

The standard for review by this Court is set forth In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

<u>Step 1</u>: Is the claimant engaged in substantial gainful activities? 20 C.F.R 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, benefits are denied. If not, the decision maker proceeds to step two.

<u>Step 2</u>: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to step three.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 3

>    Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. 404 Subpt. P, App. 1. If the impairment meets or equals a listed impairment, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal a listed impairment, the evaluation continues to step four.
>    Step 4: Does the impairment prevent the claimant from performing past relevant work? 20 C.F.R. 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the decision maker determines the claimant's residual functional capacity. If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past work, the decision maker continues to step five.
>    Step 5: Is the claimant able to perform other work in the national economy considering age, education, work experience and residual functional capacity? 20 C.F.R. 404.1520(a)(4)(v), 416.920(a)(4)(v).
>
>    The claimant bears the initial burden of proving disability. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F. 2d 1496, 1498 (9th Cir. 1984).

**ISSUES**

The general issue raised is whether there is substantial evidence to support the ALJ's decision to deny benefits and, if so, whether that decision was based on proper legal standards. The issues raised by the parties are: whether the ALJ erred when he evaluated the medical evidence, determined plaintiff's credibility and residual functional capacity, and asked the vocational expert a hypothetical.

**ADMINISTRATIVE HEARING**

Plaintiff was 44 on the date of the hearing, single, and living alone. (Tr. 22; 330.) Plaintiff completed the eighth grade.

(Id.) He testified that he cannot work because with phlebotomy treatment he is "just worn out." (Tr. 332.) He had last seen Carol Hathaway, M.D., three months before the hearing for treatment of his PCT. (Tr. 333.) He takes care of all of his personal needs, cooks, reads, takes walks, grocery shops, and drives. (Tr. 333-35.) Plaintiff can lift 15 to 20 pounds. (Tr. 336.)

**ANALYSIS**

1. Evaluating medical opinions

Plaintiff alleges that the ALJ erred by failing to properly credit the opinion of treating physician Katherine Griffing, M.D. (Ct. Rec. 12 at 12.) The Commissioner responds that the ALJ gave specific and legitimate reasons for discounting some of Dr. Griffing's opinions. (Ct. Rec. 16 at 8.)

The medical opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Rodriguez v. Bowen*, 876 F. 2d 759, 761 (9th Cir. 1989). "When another doctor's opinion contradicts the opinion of a treating physician, the Secretary can disregard the latter *only* by setting forth 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Ramirez v. Shalala*, 8 F. 3d 1449, 1453 (9th Cir. 1993) [(quoting *Baxter v. Sullivan*, 923 F. 2d 1391, 1396 (9th Cir. 1991)]. The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of either an examining or a treating physician's opinion. *Lester v. Chater,*, 81 F. 3d 821, 831 (9th Cir. 1995), citing *Pitzer v.*

*Sullivan*, 908 F. 2d 502, 506 n. 4 (9th Cir. 1990). The opinion of a non-examining physician may constitute substantial evidence if it is supported by and consistent with other evidence. *Andrews v. Shalala*, 53 F. 3d 1035, 1043 (9th Cir. 1995); *Lester,* 81 F. 3d at 830-31.

On November 1, 2001, Dr. Griffing diagnosed CPT, impaired hand mobility secondary to scarring caused by CPT, basal cell carcinoma on the left cheek and hypertension, possibly caused renally. (Tr. 156.) Dr. Griffing noted, apparently based on Plaintiff's report, that his skin problem had been present for four years and had not been treated during that time. (Id.) She stated that Plaintiff had suffered joint pain, also without having received treatment. (Id.) Dr. Griffing opined that Plaintiff was severely limited: he was unable to lift at least 2 pounds or unable to stand and/or walk. (Tr. 157.) She expected this level of disability to last more than 26 weeks, depending on Plaintiff's response to therapy. (Id.) She opined that phlebotomy therapy over six months to one year can reduce symptoms in many patients, as would hepatitis C treatment. (Id.) She told Plaintiff to begin avoiding the sun. (Tr. 217.)

Interestingly, two weeks later, on November 15, 2001, Dr. Monroe, M.D. performed a consultative examination for DDS. (Tr. 158.) After performing various physical tests, he opined that Plaintiff showed an RFC for gross movements of his hands, and an RFC for fine and dexterous movements in his right hand. (Tr. 160.) Similarly, chart notes from the Spokane Clinic dated January 30, 2002 reveal that Plaintiff's hands were much better and he can bend fingers of both hands to fists. (Tr. 208).

In March of 2002, Jeanette Worley, ARNP, noted that Plaintiff

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 6

declined taking tylenol or advil the night of his shots and declined antidepressants after reporting mood swings. (Tr. 186.)

On May 3, 2002, Dr. Griffing diagnosed continuing CPT and loss of mobility due to scarring, mild shortness of breath with exertion, fatigue due to interferon treatment for hepatitis C, and hypertension resolved on therapy. (Tr. 180.) Dr. Griffing reported that plaintiff was "able to make [a] fist (with right) hand and extend fingers. Fist with left hand limited by injuries to index and little finger." (Tr. 205.) At this time Dr. Griffing noted in a diagram two nodules on the left hand near the base of the fist and second fingers. (Id.)

Dr. Griffing indicated that workplace restrictions included no sunlight, no chemical exposure and that the wok could not involve stress to the hands. (Tr. 181.) At that time the doctor opined that plaintiff's ability to be released for work "depends on [his] response to therapy." (Id.) In fact Dr. Griffing suggested that while manual work was not possible, an evaluation "by DVR for [a] special job not requiring hands" might be appropriate. (Id.)
START here

On June 3, 2002, Ms. Worley noted that, overall, after four months of treatment for hepatitis C, Plaintiff felt that he was doing quite well. (Tr. 183.) He complained of fatigue, inability to concentrate, and memory loss associated with medication. (Id.) Ms. Worley observed that Plaintiff's blisters had dried. (Id.) By June 28, 2002, Plaintiff told Ms. Worley he was much improved over the last month or so. (Tr. 188.) On August 12, 2002 chart notes from the Spokane Clinic reveal that Plaintiff has "suntanned skin, including

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 7

arms." (Tr. 202.) On August 15, 2002, clinic notes indicate PCT is stable with no blisters, and in April of 2003, Plaintiff can grip completely with his right hand. (Tr. 236; 244.)

On April 4, 2003, Dr. Griffing reports that plaintiff's hands have improved compared to 1-2 years ago. (Tr. 244.) On April 18, 2003, Dr. Griffing notes a referral of the plaintiff to DVR for rehabilitation. (Tr. 246; 250.)

The ALJ properly rejected the severity of impairment assessed by Dr. Griffing because it was inconsistent with the Plaintiff's own description of his abilities, and with other medical evidence from treatment providers:

> " . . . the claimant reported in April 2003 that 'he could do anything he needed to do with his left hand and denied pain or other symptoms' which also indicates the claimant is not as limited in functioning as he has alleged, although again, Dr. Griffing opined that the claimant continued to be severely limited due to cutaneous porphyria and fatigue/malaise secondary to hepatitis C, although liver function tests in October were improved compared to previous tests despite failed interferon treatment the year before.
>
> For these reasons, the undersigned rejects the opinion of Dr. Griffing that the claimant was 'severely' limited, as the statements by the claimant and office notes do not reflect same."

Tr. 25.

The ALJ gave specific and legitimate reasons supported by substantial evidence in the record for discounting the severe limitations assessed by Dr. Griffing. Accordingly, the ALJ's determination must be affirmed.

### 2. Assessing plaintiff's credibility

Plaintiff asserts that the ALJ erred when he found Mr. Steele less than completely credible. (Ct. Rec. 12 at 13.) The Commissioner responds that the record supports the ALJ's determination. (Ct. Rec.

1  16 at 12.)

2      In *Thomas v. Barnhart*, 278 F. 3d 947, 958-59(9th Cir. 2002), the court noted when the ALJ finds the Plaintiff's testimony as to the severity of pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the Plaintiff's testimony. *Bunnell v. Sullivan*, 947 F. 2d 341, 345-46 (9th Cir. 1991)(en banc). The ALJ may consider the following factors when weighing the Plaintiff's credibility: "[plaintiff's] reputation for truthfulness, inconsistencies either in [plaintiff's] testimony or between [his/her] testimony and [his/her] conduct, [plaintiff's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [plaintiff] complains." *Light v. Soc. Sec. Admin*., 119 F. 3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin*., 169 F. 3d 595, 600 (9th Cir. 1999).

    The ALJ found Plaintiff not credible because of inconsistencies between his statements to medical providers and his testimony at the hearing, and between his testimony and the medical records. (Tr. 25.) If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin*., 169 F. 3d 595, 600 (9th Cir. 1999).

    The ALJ discounts Plaintiff's credibility because his

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 9

testimony was inconsistent with statements he made to medical providers, and with chart notes and other medical records. On July 9, 2002, plaintiff reported to Dr. Griffing that he rolls his own cigarettes. (Tr. 204.) On April 29, 2003, plaintiff told Donna Mann, O.T.R., that he felt he "can do everything he needs to do with his hand." (Tr. 253.) He denied pain and said he didn't think he would gain from further intervention. (Id.) The ALJ notes:

> "He testified he has low energy and does no housework or much of anything. He testified he reads and takes short walks (2 to 3 blocks)and that he could lift 15 to 20 pounds. . . He testified that Interferon treatment made him very ill with hair loss and fatigue.
>
> The medical evidence reflects that this claimant was first evaluated on November 1, 2001, for cutaneous porphyria tarda with impaired left [hand] but by February of 2002 his hands were much better and he could bend his fingers of both hands to make a fist. . .
>
> Also, although claimant has been advised to avoid sunlight, office notes dated August 2002 reflects observation that he had suntanned skin, including his arms. . .
>
> The claimant reported in April 2003, that 'he could do anything he needed to do with his left hand and denied pain or other symptoms' which also indicates the claimant is not as limited in functioning as he has alleged . . ."

Tr. 25.

Substantial evidence in the record supports the ALJ's credibility determination. Plaintiff told doctors his left hand was fully functional but testified he could do very little. Doctors observed that he regained movement in his hands following phlebotomy treatment. The medical evidence as a whole, as well as plaintiff's statements to medical providers, is inconsistent with the level of impairment claimed at the hearing. The record supports the ALJ's credibility determination.

### 3. Hypothetical to vocational expert

1  Plaintiff contends that the ALJ gave the vocational expert an
2 incomplete hypothetical. (Ct. Rec. 12 at 13.) The Commissioner
3 answers that the hypothetical included all of plaintiff's
4 limitations which are supported by the medical evidence. (Ct. Rec.
5 16 at 15-16.)
6  When the ALJ's first hypothetical was reduced from a full to a
7 wide range of light work, with environmental and other limitations,
8 the vocational expert opined that such a person could work as an
9 agricultural produce sorter, cannery worker, or cafeteria worker.
10 (Tr. 348.) This was appropriate because plaintiff testified that he
11 could lift 15 to 20 pounds, within the range of light work.
12  Alternatively, the ALJ gave the same limitations but changed
13 the exertion level from light to sedentary. The VE opined that a
14 person with these limitations would be able to work as a sedentary
15 cashier or sewing machine operator. (Tr. 349.) Finally, when the
16 limitation of only occasional fingering and handling with both hands
17 was added, the VE opined that a person with these additional
18 limitations would be able to work as an usher or school bus monitor,
19 although she indicated that the latter was often less than full-time
20 employment. (Tr. 350-51.)
21  The ALJ's hypotheticals included limitations supported by the
22 evidence, such as light work based on Plaintiff's stated lifting
23 ability. There was no error in the ALJ's analysis at step five.

24 **CONCLUSION**

25  1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 11) is
26 **DENIED.**
27  2. Defendant's Motion for Summary Judgment (Ct. Rec. 15) is
28

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
 - 11

1 **GRANTED.**

2     3. Any application for attorney fees may be filed by separate
3 Motion.
4     4.  The District Court Executive is directed to file this
5 Order and provide a copy to counsel for Plaintiff and Defendant.
6 Judgment shall be entered for Defendant and the file **CLOSED.**
7     **DATED** this 24th day of June, 2005.

9     s/ Michael W. Leavitt

10     MICHAEL W. LEAVITT
    UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 12